173      75
f101a²464

# MALLOY v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

### Division One, March 18, 1903.

1. **Negligence: COLLISION: SERVANTS IN CHARGE: CURVE: HIGH SPEED: GENERAL AND SPECIFIC ALLEGATIONS.** Defendant was injured by the collision of the car on which he was riding with another car running on the same track in the opposite direction. His car was running at the rate of twenty to thirty-five miles an hour, and the accident occurred as the cars were rounding a curve, where the view of the track was so obstructed by the underbrush that the motormen could not, after discovering each other, stop in time to avoid the accident. Plaintiff's petition predicated his right to recover upon the negligence of the defendant's servants in charge of the two cars. *Held*, first, that this allegation can not be restricted to the negligence of the two motormen, but includes all servants in any manner connected with the actual management of the movements of the cars, and, therefore, is just as general as if it had simply charged defendant with so running its cars as to cause a collision, and, hence, plaintiff's case did not fail because he failed to show any specific negligence in the motormen. *Held*, second, that if this petition is to be considered as charging specific negligence of the motormen, nonsuit could not be compelled, because the running of the cars around a curve where the view was obstructed, at such a high rate of speed that they could not stop in time to avoid a collision, was evidence to sustain that charge.

2. ———: EXCESSIVE VERDICT. Plaintiff was injured by a collision of two of defendant's street cars running at a high rate of speed. The evidence shows his testicles were so injured that one of them drops down from four to six inches, in consequence of which he is compelled to wear a suspensory; that the abdominal wall was ruptured, causing his intestines to come out and drop into the scrotum, and in consequence he is compelled to wear a truss; that his hip joint is injured so he is lame and suffers pain; that his kidneys and bladder were injured so that he could not pass his urine for twenty-four hours, and there was blood in the urine; and an examination by a distinguished physician a month before the trial revealed that there was "very evident injury to the spinal cord, which would probably be progressive and end in locomotor ataxia." There was equally positive and credible evidence introduced by defendant to show that none of these things was true. *Held*, that an award of $7,000 is not so excessive, if plaintiff's testimony is true, as to shock the judicial sense of justice and right, and, whether or not it was true, is for the determination of the jury, and, hence, under the circumstances, the appellate court will not interfere.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Douglas*, Judge.

AFFIRMED.

*McKeighan & Watts*, and *Robert A. Holland, Jr.*, for appellant.

(1) The court erred in refusing to give the instruction in the nature of a demurrer to the evidence offered by defendant at the close of plaintiff's evidence in chief, and at the close of all the evidence.. The plaintiff in his petition claims that the collision in question was due to the negligence of the particular agents of defendant in charge of the two cars that collided. He failed to introduce any evidence showing, or tending to show, that the said agents were guilty of any negligence whatever. As plaintiff specified particular negligence, it was incumbent upon him to prove this. Feary v. Railroad, 162 Mo. 75; Chitty v. Railroad, 148 Mo. 64; McMenamy v. Railroad, 135 Mo. 440; Waldeir

v. Railroad, 71 Mo. 314; McCarthy v. Hotel Co., 144 Mo. 397. (2) The court erred in giving instruction 1 at the request of plaintiff, the said instruction submitting to the jury the question as to whether the particular servants in charge of defendant's said cars were guilty of any negligence. As there was no evidence of any negligence on their part, it was error to submit this proposition to the jury. Stone v. Hunt, 114 Mo. 66; State v. Hoke, 102 Mo. 410; Evans v. Interstate Co., 106 Mo. 594; Stone v. Brown, 145 Mo. 680; Wilkerson v. Eilers, 114 Mo. 245. (3) The court erred in overruling defendant's motion to set aside the verdict on the ground that it is excessive, and is clearly the result of bias, prejudice and passion. Where this is evident from the testimony in the case it is the duty of the court to set aside the verdict. Burdict v. Railroad, 123 Mo. 236; Sawyer v. Railroad, 37 Mo. 240; Trigg v. Railroad, 74 Mo. 147; Haynes v. Town of Trenton, 108 Mo. 123; Gurley v. Railroad, 104 Mo. 211; Nicholds v. Crystal Plate Glass Co., 126 Mo. 55.

*A. R. Taylor* for respondent.

The allegations of the petition fully cover the negligence proven upon the trial. The evidence clearly tended to prove that the colliding cars were negligently managed and controlled. It is immaterial what servant or servants controlling or managing the cars, was the offending party. The fact is invincible that some one of defendant's servants controlling these cars was delinquent. If it was the president in person in control of the Kinloch palace car, careering northward, his negligence will answer to the charge in the petition. If it was the superintendent, starter or any other servant of the company having control of, managing or running the cars, or either of them, either of these parties will answer the description of the averment of the petition. The points made by the appellant as 1 and 2 are there-

fore untenable for the reason that the evidence did show or tend to show, that defendant's servants in charge of the cars did so carelessly and negligently manage and control said cars as to cause and suffer them to collide; we do not deem these two points tenable or tending towards such condition. There is another conclusive reason why these contentions are groundless. The fact of a collision of two passenger cars of a defendant upon a track of such defendant is, by settled law, presumptive evidence of the negligence of the carrier in the management and control of the carrier's servants in managing and controlling the cars. This presumptive evidence, in the absence of proof showing that the collision occurred without any negligence on the part of the carrier, entitles the plaintiff injured to recover. This settles the contentions in question. But we go further and submit that if the evidence should be that there was other and different negligence of the carrier and its servants offered and admitted, which was the proximate cause of the injury, such a variance would be no ground of reversal, and this, too, by force of the statute law. The code of practice in this state is specific upon this question. Section 655, Revised Statutes 1899, is in these words, "variance when deemed material." "No variance between the allegation in the pleading and the proof shall be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits; when it shall be alleged that a party has been so misled that fact shall be proved to the satisfaction of the court by affidavit showing in what respect he has been misled, and thereupon the court may order the pleading to be amended upon such terms as shall be just." This wholesome statute was intended to put at rest any complaint that there is a variance between the pleading and the proof. The language admits of no other construction. The court will interpret statutes so as to effectuate the purpose of the law, not to repeal or nullify it. Howard County v. Baker, 119 Mo.

406; Bank v. Leyser, 116 Mo. 68; Ridenhour v. Railroad, 102 Mo. 283; Turner v. Railroad, 51 Mo. 501; Clements v. Maloney, 55 Mo. 352; Waldheir v. Railroad, 71 Mo. 514; Ely v. Porter, 58 Mo. 158; Bank v. Willis, 79 Mo. 275; Olmstead v. Smith, 87 Mo. 607; Chitty v. Railroad, 148 Mo. 75.

MARSHALL, J.—This is an action for damages for personal injuries sustained by the plaintiff, while a passenger on one of the defendant's cars, near Ramona Park, in St. Louis county, on September 7, 1900, in consequence of a collision between the car upon which plaintiff was riding as such passenger, and the Kinloch Palace Car, on which the president of the defendant was riding. The negligence charged in the petition is that the defendant "did, by the servants in charge of said car and its servants in charge of another of the cars, so carelessly manage and control said cars as to cause and suffer the same to collide." The answer is a general denial.

The evidence shows that the plaintiff and his wife boarded one of defendant's cars at Kinloch Park, in St. Louis county, on the evening of September 7, 1900, to be transported to the city of St. Louis; that he paid the fare for both; that his wife was seated, but owing to the crowded condition of the car the plaintiff was compelled to stand, which he did at about the fifth seat from the front of the car; that the car proceeded towards the city and when it got near Ramona Park, and while it was running at a very rapid rate, varying, according to the witnesses, from twenty to thirty-five miles an hour, it collided with the president's private car, the Kinloch, in consequence of the two cars running in opposite directions on the same track at the same time. The collision occurred on a curve in the track, by which, and the underbrush and small trees that were growing near the track, the view of the motormen on the two cars was obstructed, so that neither saw the other in time to stop

his car and prevent the collision, and neither knew, prior to the instant before the accident, that the other was on the same track. The plaintiff was seriously injured by the collision, the particulars of which will be referred to in the course of the opinion. There was a verdict and judgment for the plaintiff for seven thousand dollars, and the defendant appealed, and assigns two principal errors, to-wit, first, that the plaintiff failed to make out a prima facie case, and, second, that the damages are excessive, and of these in their order.

## I.

**Prima Facie Case:**

The defendant contends that the plaintiff failed to make out a prima facie case and that the court erred in not ordering a nonsuit. The contention in this regard is, that instead of pleading general negligence of the carrier, under which a prima facie case would be made out by simply establishing the relation of a carrier and passenger and the collision, the plaintiff predicated a right to recover upon the negligence of the defendant's servants in charge of the two cars, and then wholly failed to show that these servants were guilty of any negligence whatever, and the defendant claims that the exact point was decided in Feary v. Railroad, 162 Mo. 75.

The rule of law is correctly stated in that case to be that if, instead of pleading generally the relation of carrier and passenger and the injury, and thus making out a prima facie case, the plaintiff limits his right to recover to a specific act of negligence, he must prove such specific negligence, and is not entitled to the benefit of the general rule.

The rule thus laid down is undoubtedly correct, but it does not have the effect claimed for it upon this case. In the Feary case the plaintiff limited the negligence to the act of the motorman allowing the lever to slip out of his hands, thereby causing the car to run down the in-

cline. The defense in that case was unavoidable accident. The issues were thus sharply drawn. The jury found for the defendant, thereby finding that it was unavoidable accident. After thus taking his chances before the jury and losing, the plaintiff claimed he was entitled to recover under the general rule, which he had not invoked at any time until after the verdict. It was held that he was not entitled to thus change his position, but that having elected to narrow the issues, he could not claim the benefit of the general rule after he had tried his case on the lines he had chosen, and had lost.

But the case at bar is by no means similar or analogous. The petition in this case charges that the collision occurred in consequence of the negligence of the defendant's servants in charge of the cars. In a restricted sense that might mean only the motorman and conductor, because they are the only servants on the car. But in a more comprehensive sense it might mean any servant of the defendant who was in any way directly charged with the running of the cars. And as was held in Rinard v. Railroad, 164 Mo. l. c. 287-8, a train dispatcher is directly charged with the running of the car, although he may not be on the car or near the place of accident; and his negligence in allowing two trains to run in opposite directions, on the same track, at the same time, was the negligence of the company, and was as much the direct cause of the collision as would be the negligence of the engineers on the two trains. Here no particular servant is specified. It is true it is limited to the servants in charge of the cars. But a collision could not be caused by a servant who was not connected with the running of the cars. A servant otherwise engaged might cause an accident, as by negligently throwing a switch or removing or leaving an obstruction upon a rail, but no servant could cause a collision unless he was in some manner connected with the actual management of the movements of the cars.

Therefore, the charge in this case is just as broad and general as if it had been that the defendant was negligent in so running its trains as to cause a collision. But the result must be the same, whichever view be taken of the meaning of the petition, for if these two cars collided in consequence of the motormen, or either of them, running around the curve, where the undergrowth and small trees obstructed the view, at such a high rate of speed that they could not stop their, cars in time to avoid a collision after they discovered each other on the track, as the jury may have found was the cause of the collision, the petition would undoubtedly have fitted the case. For in this view the collision would be caused by the negligence of the servants in charge of and actually upon the cars. Or, if the train dispatcher, or starter, or person whose duty it was to regulate the running of the cars, and to give notice of any such extra cars on the track, was negligent, the petition will fit that condition, and such negligence falls within the specification of negligence in the petition, and the defendant would be liable.

Certain it is that the collision was caused by the negligence of some one or more of the defendant's servants who were in charge of the cars, in one capacity or another, and directly connected with their movements. It follows that the petition is as broad as is necessary to support a recovery in this case, and that as it was not incumbent upon the plaintiff to charge the specific negligence of any particular servant, so it was not necessary for the plaintiff to show which servant so in charge of the cars was negligent, for the defendant was liable for the negligence of all such servants.

II.

Damages.

The defendant strenuously insists that the damages assessed are excessive, and cites many cases wherein

a remittitur has been ordered because the court deemed the damages excessive. In none of the cases cited, however, were the injuries of the same character or degree of those suffered in this case.

The injuries, as shown by the plaintiff's evidence, are that his testicles were injured so that one of them would drop down from four to six inches; and he is compelled to wear a suspensory to keep them up; the abdominal wall was ruptured, causing his intestines to come out and drop into the scrotum, and in consequence he is compelled to wear a truss; his hip joint is injured, so that he is lame and suffers pain; his kidneys and bladder were injured, so that he could not pass his urine for twenty-four hours, and there was blood in the urine; and one of the most distinguished physicians in St. Louis testified that he examined him a month before the trial and that there was "very evidently injury to the spinal cord, and that it would probably be progressive and end in locomotor ataxia."

The defendant expresses doubt as to the truth of the evidence of the plaintiff's witnesses in this regard, and points to the fact that the plaintiff himself testified that he was only confined to his bed for fifteen days; that four weeks after he was able to leave his bed he went to work in the city fire department as a day watchman, and in a short time he resumed his former position as a fireman in the fire department, which he says is a position that required great agility and physical strength.

The defendant also produced a most distinguished surgeon in St. Louis, who testified that he examined the plaintiff a few moments before taking the witness stand, and found that he had varicocele, that is, one testicle hangs lower than the other, but that ten per cent of the entire male population are afflicted in the same way; that nobody knows what causes it, but it is frequently or generally congenital; that the plaintiff was wearing a truss, but there was no occasion for him to do so; that he

had a porous plaster on the back and one on the hip, but he found, "no swelling, nothing abnormal, no diseased condition there;" that witness might have been bruised, but "from his examination witness stated that he did not see, feel or hear anything wrong with the plaintiff at the present time, except that he appears to be nervous; there is no swelling, no enlargement or anything wrong with him except he has varicocele." The witness said that if the plaintiff had had concussion of the spine, or was suffering from that condition, it would not be possible during the actual concussion for him to discharge the duties of a fireman, "but three or four weeks afterwards, the man might be able to get about, and do that kind of work. The fact that the man is doing such work tends to show he has recovered, at least, that he is getting better."

The result of the matter is this: the defendant's contention that the plaintiff could not do the work of a fireman if he had suffered an injury to the spinal cord is disproved by the testimony of its own medical expert; the positive, direct and unequivocal testimony of the plaintiff's attending physician as to the nature and extent of his injuries when he attended him for several weeks after the injury, is contradicted by the equally positive, direct and unequivocal testimony of the defendant's medical expert, who examined him during the course of the trial; and the testimony of the plaintiff's eminent surgeon (who examined the plaintiff a month before the trial) as to the evident injury to the spinal cord and its probably disastrous consequences, is contradicted by the defendant's eminent surgeon, who says there is nothing the matter with his spine except that he has a porous plaster on it.

Manifestly they can not all be right in their diagnosis. That all of these distinguished and justly eminent physicians and surgeons are perfectly honest and sincere in what they say, there is absolutely no room to doubt. But it only serves to demonstrate that no human

healer has ever been able to diagnose, beyond a doubt, every case, nor to read the workings of nature so as to be able to foretell what the exact result of an injury to the intricate machinery of the human organism will amount to or result in.

As such eminent specialists differ so widely as to the injuries complained of, and as to their probable duration and permanency, it could not reasonably be expected that an appellate court could or would attempt to say which is right. The law commits the solution of such problems to the jury, subject, of course, to review and correction by the courts in cases of manifest and flagrant abuse of privileges, discretion and duty on the part of the jury, which, however, is clearly not present in this case.

Of course there can never be any exact rule laid down by the courts for measuring damages for personal injuries. Accident insurance companies have a graduated scale of compensation for personal injuries, but that must necessarily be purely an arbitrary rule. Primarily the law leaves the question to the honesty and common sense of the jury. But because experience has shown that all juries do not assess the same amount for the same kind of injuries, the courts have been compelled to interfere occasionally. The criterion adopted, in appellate courts, is that the amount awarded shocks the judicial sense of right and justice. And even this is not an exact rule, for what might shock one judge, might seem wholly inadequate compensation to another judge. This, however, is the result of human infirmity, and the fact that only finite minds are available to solve these problems of nature and administer human justice.

The amount assessed in this case is large. But if the plaintiff's injuries are of the character, nature and probable duration that his witnesses state, that amount is not at all shocking to the judicial sense of right and justice. In fact it is not more than a proper compensation for the impairment of his manhood, his health and

.his ability to fight the battle of life, without allowing anything for his suffering and his medical expenses. On the other hand, if the defendant's showing is correct the verdict is absurdly excessive.    These considerations were met and answered by the jury and the trial judge. They were in a better position to solve the matter than an appellate court could possibly do.  There is a sharp and   irreconcilable   conflict in the   evidence.   Under these circumstances this court will not interfere.

### III.

The point that the amendment to the Constitution allowing nine jurors to return a verdict was never legally adopted and therefore is not the law, and that the court erred in instructing the jury that nine of the jurors could return a verdict, was settled by the decision of this court in Gabbert v. Railroad, 171 Mo. 84.

These conclusions make it unnecessary to refer to other minor points urged by the defendant, as they depend upon and are covered by the principles here announced.

The judgment of the circuit court is affirmed.    All concur.