JAMES B. MAXIE v. GULF MOBILE & OHIO RAILROAD COMPANY, a Corporation, Appellant.—No. 40231.—202 S. W. (2d) 904.

Division One, June 9, 1947.

634

*Wayne Ely* for appellant.

636

*Sol Andrews; Wm E. Gallagher* and *Wm. H. Allen* for respondent.

DALTON, C.—Action for damages for personal injuries under the Federal Employers' Liability Act, 45 U. S. C. A., Sec. 51 et seq. Verdict and judgment were for plaintiff for $17,000 and defendant has appealed.

Plaintiff was employed by defendant in repairing and rebuilding freight cars at its Frascati shops in Mobile, Alabama, and had been so employed for many years. It is admitted that defendant maintained and operated the shops and that plaintiff was an employee of defend-

638

ant therein. On October 23, 1943, plaintiff was severely injured when four boxcar doors, which were standing behind him, fell upon him, knocked him over and crushed him to the ground. That the doors in fact fell upon plaintiff and injured him was conceded at the trial. No issue is presented here concerning the extent. of plaintiff's injuries or the amount of the verdict. Defendant offered no evidence. Other facts will be stated in the course of the opinion.

Error is assigned (1) on the court's action in overruling defendant's request for a directed verdict, (2) on the giving and refusal of instructions, and (3) on the overruling of objections to alleged improper and prejudicial argument and a request for a mistrial on account of such argument.

The motion for a directed verdict was based upon two grounds, towit, that plaintiff failed to prove facts sufficient to bring his case under the provisions of the Federal Employers' Liability Act and failed to show "that defendant was negligent in any respect or manner as charged in plaintiff's petition." Appellant now contends "that plaintiff's affirmative showing of the situation placed his case outside of the Federal Act"; and that plaintiff produced no evidence to prove any one of the specific negligent acts or omissions charged in the petition.

The trial court instructed the jury, as a matter of law, that at the time plaintiff was injured, he "was engaged in interstate commerce or was engaged in the performance of duties in furtherance of interstate commerce." The court further submitted the cause to the jury under the res ipsa loquitur doctrine.

 It is admitted that defendant was engaged in interstate commerce at the time plaintiff was injured, but it is denied that plaintiff was so engaged then or at any other time. Defendant maintained two repair tracks in the Frascati shops. Upon one of these repair tracks the defendant would ordinarily place freight cars requiring "running repairs." The cars were put in, repaired and gotten out on the same day and so "kept running." Not all cars placed on the track were loaded. The track was under the supervision of Foreman Pennington. Upon the other repair track, the defendant would place other cars requiring from light to heavy repairs. These cars were usually empty and remained on the repair track until they were repaired. If they needed only a few boards in the roof or sides, some patching, or some safety repairs, they might be finished and removed in three days, but cars usually remained three to six days on this track. If complete rebuilding was required, it might take as much as one or two weeks. This track was under the supervision of Foreman Barnett.

"There was lots of light work" on the track where plaintiff worked, but few, if any, cars were repaired in less than three days and often a week or more was required to complete repairs. The foreman di-

rected plaintiff where to work, and between 1940 and 1943, on some six different occasions plaintiff worked (from two hours to a half day) under Foreman Pennington, jacking up cars and putting wheels on cars on the "running repair track." Plaintiff did not know where the cars were from or where they were going. Most of the cars that plaintiff worked on were empty. Except on the occasions stated, plaintiff worked on the general repair track under Foreman Barnett, doing both light and heavy repairs as required by the condition of the cars placed on the track. On one occasion plaintiff's foreman sent him to take a "drawhead" from a coupling to Estonia, Mississippi, to put in a freight car. At another time plaintiff was sent to the Government Street loop to set a freight car "back on center." These occasions were after 1940, but plaintiff did not know where the cars were from or where they were going.

The above facts, concerning the type and kind of work done by plaintiff and the type and kind of work done on the two repair tracks, appeared from the oral testimony of plaintiff and his witnesses. The witnesses were vigorously cross-examined by defendant's attorney on the theory that the work in which plaintiff was engaged on the general repair track, under Foreman Barnett, was limited to heavy repairs on empty freight cars, "dead in the yards," and did not include light repairs to cars in use. If this had been the only evidence concerning the character of plaintiff's employment, its credibility, weight and value would have been for the jury. Wolff v. Campbell, 110 Mo. 114, 120, 19 S. W. 622; Central States, S. & L. Ass'n. v. United States F. & G. Co., 344 Mo. 580, 66 S. W. (2d) 550, 552.

Documentary evidence offered by plaintiff tended to show that the car upon which plaintiff was working at the time of his injury was G. M. & O. Box Car No. 4656. This car left East St. Louis, Illinois, September 17, 1943, and moved interstate to Mobile, Alabama. During part of the trip it was loaded. It reached the Frascati shops October 16, 1943, and was given heavy repairs and re-painted. The work was completed by October 23, 1943, and the car was ready to be moved out. On October 28, 1943, the same car, loaded with roofing, was delivered to the Southern Railroad for shipment to Morriston, Tennessee. These facts were admitted. During September, October and November, 1943, some 44 other cars moved from Illinois, Tennessee, Mississippi and Louisiana to Mobile, Alabama, and into defendant's shops for heavy repairs and out again into other states. Other exhibits showed the type and kind of repairs made on the various cars during this period, and when the cars subsequently moved loaded in interstate commerce. Appellant refers to these exhibits as "positive evidence as to the nature or character of plaintiff's work." The 44 cars listed remained in Mobile, Alabama, for heavy repairs an average of 15 days. Whether repairs were in progress all of that time does not appear.

Appellant bases three assignments on the character of plaintiff's employment: (1) that the court erred in failing to sustain the motion to dismiss because plaintiff's evidence conclusively showed his employment was not under the federal act; (2) that the court erred in giving plaintiff's instruction I, which told the jury that plaintiff, as a matter of law, was engaged in duties in furtherance of interstate commerce; and (3) that the court erred in refusing defendant's instruction E, which would have submitted the issue ("whether or not plaintiff was engaged in interstate commerce") as a question of fact for the jury to decide.

As stated, it was admitted that defendant was engaged in interstate commerce; that defendant maintained and operated the Frascati repair shops; and that plaintiff, when injured, was an employee of defendant, "was working at his usual place in said yard and was working on a freight car." Appellant denied that the freight car "was in interstate commerce at the time." It further appeared from documentary evidence that freight cars, which had been used by defendant in interstate commerce, were regularly being repaired in said shops; that many of such cars, after receiving heavy repairs on the repair track where plaintiff was employed, were put back into use in interstate commerce; and that the car, upon which plaintiff was working, when injured, had been so used in such commerce and was subsequently loaded and delivered to another railroad for interstate shipment. These facts are conceded by appellant, but appellant contends that, since the freight cars upon which plaintiff worked were actually "dead in the yards" (not in actual use in interstate transportation) at the time plaintiff was repairing and reconstructing them, his work as a matter of law could not be "the furtherance of" interstate commerce or "closely and substantially affect such commerce."

Whether the court may determine, as a matter of law, any issue in favor of a party having the burden of proof, of course, depends upon the character of the evidence offered, and the admissions, actual or implied, of the party adversely affected. If the essential facts concerning the character of plaintiff's employment were not in controversy the issue was one of law for the court. Drew v. Missouri Pacific R. Co., 340 Mo. 321, 100 S. W. (2d) 516, 518; Myers v. Chicago, B. & Q. R. Co., 296 Mo. 239, 246 S. W. 257, 263; Boles v. Hines (Mo. App.), 226 S. W. 272, 274; Antonio v. Pennsylvania R. Co., 155 Pa. Super. 277, 38 Atl. (2d) 705.

We may concede that (prior to the 1939 amendment) the freight cars receiving heavy repairs on the repair track where plaintiff worked "were dead in the yards" (not in use in interstate transportation) during the course of such repairs. Toussaint v. Cleveland, C. C. & St. L. R. Co., 340 Mo. 578, 104 S. W. (2d) 263; Minneapolis & St. L. R. Co. v. Winters, 242 U. S. 353, 37 S. Ct. 170, 61 L. Ed. 358;

New York, N. H. & H. R. Co. v. Bezue, 52 S. Ct. 205, 76 L. Ed. 370. The cross-examination of plaintiff and his witnesses clearly indicated that the only matter in dispute was whether a part of plaintiff's duties included the making of light repairs on cars in actual use in interstate commerce and whether plaintiff occasionally did some work on the running repair track. From the pleadings, the proceedings in the trial court and the briefs filed here, we conclude that the undisputed facts are that plaintiff was regularly employed by defendant in ▮▮▮ repairing and rebuilding freight cars, which had been regularly used in intrastate and interstate commerce, before being repaired, and which were destined by custom and practice for the same type of use after being repaired.

Prior to the 1939 amendment an employee was required to show that at the time he received his injury, he was "engaged in interstate transportation or in work so closely related to it as to be practically a part of it." Shanks v. Delaware, L. & W. R. Co., 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436; Maxwell v. Kurn (Mo. Sup.), 185 S. W. (2d) 9.

The act, as amended, now provides that "any employee of a carrier, any part of whose duties as such employee shall be the *furtherance of* interstate or foreign commerce; or shall in any way directly or *closely and substantially, affect such commerce* as above set forth *shall,* for the purpose of this chapter, *be considered as being* employed by such carrier *in such commerce* and shall be considered as entitled to the benefits of this chapter." (Italics ours.)

The amended act was considered in the case of Shelton v. Thomson, 148 F. (2d) 1. In that case the plaintiff had "operated a crane in a storehouse of the Chicago and Northwestern Railway Co., the crane being used to lift wheels and other supplies, which were in turn used in the repair of defendant's (trustee's) freight cars." In holding the Act, as amended, applicable to plaintiff's employment, the court said: "The word 'furthermore' is a comprehensive term. Its periphery may be vague, but admittedly it is both large and elastic. It would not be an undue stretching of it to hold that one who is engaged with others in the process of repairing the car so that it may thereafter be moved in interstate (or by happenstance in intrastate) commerce, is engaged in an occupation 'in furtherance' of interstate commerce. A car can not travel even in interstate commerce, without wheels. Ordinarily a car is as usable in interstate as in intrastate commerce. The same crane which plaintiff operated, moved many articles. Some were used on cars which moved in interstate commerce. No one in the employ knew where the car wheel would be used. Perhaps the success of the repair efforts would determine its future use."

The act, as amended, was also considered by this court in the case of Taylor v. Lumaghi Co., 352 Mo. 1212, 181 S. W. (2d) 536, but in

that case plaintiff was a member of the crew of a train, which was interstate in character, and the fact that plaintiff was injured while making a local movement, intrastate in character, did not prevent the amended act from being applicable to plaintiff's employment. We do not construe that opinion as conflicting with our holding in this case.

In the case of Edwards v. Baltimore & Ohio R. Co., 131 F. (2d) 366, 369, the plaintiff was injured while repairing a locomotive in defendant's shops. The locomotive had been "put to one side to afford opportunity for repair." The court said: "Inasmuch as this locomotive was used in interstate commerce nad was destined to resume such service as soon as repaired, plaintiff, engaged in repairing it and fitting it for further commerce, thereby furthered and substantially affected interstate commerce within the meaning of the law."

In the present case, it was not shown that the freight car upon which plaintiff was working, nor that any other particular car upon which plaintiff worked, was expressly destined to or set apart for interstate rather than to intrastate commerce, yet upon the facts shown, and in effect conceded to be true, it appeared that in the regular course of defendant's business, the cars had been so used and the repaired cars would be and were being so used in interstate commerce. Plaintiff was not required to show that the freight car or cars which he was repairing and rebuilding were actually in use in interstate transportation at the time plaintiff was injured. It is wholly immaterial that "plaintiff did not testify that he ever worked on any car that was interrupted while it was moving in interstate commerce or transportation," or that any of his duties required him to work upon a car so moving. ▉ Ermin v. Pennsylvania R. Co., 36 F. Supp. 936, 940. It was sufficient to show that his duties were in the "furtherance of" interstate commerce or in any way directly or closely or substantially affected such commerce. The repair and rebuilding of freight cars, under the facts shown, was sufficient to "be considered as being" in such commerce under the Act, as amended. In view of the conceded facts with reference to plaintiff's employment the court did not err in giving plaintiff's instruction I, that plaintiff's employment was in "furtherance of" interstate commerce. The court did not err in refusing to direct a verdict for defendant on the ground that plaintiff was not under the act, nor did the court err in refusing defendant's instruction E.

▉ We now consider appellant's contention that the court should have sustained the motion to dismiss, because "plaintiff utterly failed to prove that defendant was guilty of any negligence." We consider it with the assignments that the court erred in giving instructions 2 and 3, submitting the cause under the res ipsa loquitur doctrine.

Appellant insists (1) that "plaintiff's petition pleaded and charged that defendant was guilty of specific acts of negligence" and plain-

tiff failed to prove the negligence complained of; and (2) that plaintiff did not make a case under the res ipsa loquitur doctrine, because "there was no evidence that the doors were in the exclusive possession and control of defendant." Plaintiff alleged that the doors were "stacked up" behind him and fell upon him, as hereinbefore stated; and pleaded further as follows: "The said doors had not been held in the regular rack used for that purpose and constituted an unusual and extraordinary hazard with which plaintiff was not acquainted. . . . The defendant owed the plaintiff the duty so to conduct its business as not to injure plaintiff. Notwithstanding its said duty in that regard the defendant did one or more of the following acts in violation of the Federal Employers' Liability Act: (a) Negligently operated its said business so that plaintiff was injured; (b) Negligently placed the said doors in such position that they fell over upon plaintiff injuring him; (c) Negligently failed to place the said doors in the usual rack provided for that purpose; (d) Negligently failed to secure the said doors safely so that the same would not fall upon plaintiff; (e) Negligently failed to warn plaintiff of the hazard to which he was exposed. . . . As a direct and proximate result of the foregoing, plaintiff sustained serious injuries . . ."

Were the allegations of the petition sufficiently broad to permit the application of the res ipsa loquitur doctrine? Respondent contends that he "pleaded generally the facts as to the extraordinary occurrence resulting in his injury" and that "defendant did one or more of certain enumerated acts, without averring any definite, specific act as causing the injury." Respondent says "the petition as a whole discloses no knowledge on the part of plaintiff of the real cause of the injury" and so does not preclude him "from going to the jury on the res ipsa rule." Respondent concedes there are many decisions holding that "if the petition pleaded only specific negligence or pleads negligence generally followed by allegations of specific negligence, showing that plaintiff knows the precise cause of his injury . . . he is not entitled to go to the jury under the res ipsa loquitur rule." Respondent further insists the Missouri decisions are not "supported by the weight of authority in other states." Anno. 79 A. L. R. 48; 160 A. L. R. 1450; May Dept. Stores v. Bell, (8th Cir.), 61 F. (2d) 830. Respondent further cites the following cases: MacDonald v. Metropolitan Street Ry. Co., 219 Mo. 468, 474, 118 S. W. 78; Chlanda v. St. Louis Transit Co., 213 Mo. 244, 252, 112 S. W. 249; Porter v. St. Joseph R. L. H. & P. Co., 311 Mo. 66, 277 S. W. 913; Powell v. St. Joseph R. L. H. & P. Co., 336 Mo. 1016, 81 S. W. (2d) 957; Malloy v. St. Louis & Suburban R. Co., 173 Mo. 75, 73 S. W. 159; Kean v. Smith-Reis Piano Co., 206 Mo. App. 170, 227 S. W. 1091. In none of these cases were the allegations of negligence similar to the allegations of this petition. Respondent relies particularly upon the case of MacDonald v. Metropolitan Street ██ Ry. Co.,

supra. In that case the allegations were as follows: "That in rounding said curve the car aforesaid in which the said John L. MacDonald was riding came to a sudden and violent stop, which was caused either by the negligent and careless condition in which the appliances used by said defendant for going around said curve were allowed to remain, or by the negligent and careless manner in which the gripman discharged his duty in managing and controlling said car, but it was either one or the other, or both, as plaintiff believes and alleges, and she is ignorant whether it was the one or the other. By said sudden and violent stoppage of said car, said John L. MacDonald was thrown violently forward and down, . . ." (219 Mo. 468, 474). It is apparent that these allegations were both general and amounted to no more than a charge of negligent condition of appliances or negligent management and control. The court well said that the petition "could not say much less than it did," and that specific negligence was not pleaded. We do not consider any of the cases cited determinative of the issue here presented.

There can be no doubt that several of the particular assignments of negligence charge specific acts or omissions of the defendant and respondent does not contend to the contrary. Pointer v. Mountain Ry. Const. Co., 269 Mo. 104, 189 S. W. 805. Concerning the criteria to be applied in determining whether an allegation of negligence is specific or general, see, Price v. Metropolitan Street Ry. Co., 220 Mo. 435, 454, 119 S. W. 932, 937. The charge of negligent failure to *warn*, negligent failure to safely *secure* the doors and negligent failure to *place* the doors in the usual rack are clearly specific charges of negligent omissions. See Lammert v. Wells, 321 Mo. 952, 13 S. W. (2d) 547, 548; Stolovey v. Fleming, 328 Mo. 623, 8 S. W. (2d) 832. Respondent, however, contends that the use of the words, "one or more of the following acts," disclose that he had no knowledge of the real cause of the injury and, further, sustain his contention that he did not aver any definite, specific act *as causing the injury*. The petition contains no allegation that plaintiff did not know what negligence caused the injury and we do not draw that conclusion from the statements therein. On the other hand the petition charges that "defendant did one or more" of the acts specified. Such an allegation without more does not indicate any lack of knowledge as to what negligence caused the injury. After pleading specific negligent acts and omissions, plaintiff further alleged that the "foregoing" negligence was the proximate cause of his injury. By the specific allegations of his petition, he was foreclosed from submitting his cause under the res ipsa loquitur doctrine. Sanders v. City of Carthage, 330 Mo. 844, 51 S. W. (2d) 529. See, Missouri cases cited in Annotation 79 A. L. R. 51; Annotation 160 A. L. R. 1453; May Dept. Stores Co. v. Bell, (8th Cir.), 61 F. (2d) 830, 837. The rule is that "one who pleads specific acts of negligence must prove such negligence or enough of such acts

to justify a recovery, and a failure so to do bars him from a recovery. . . . And this is true although he might have pleaded negligence generally and by an invocation of the doctrine res ipsa loquitur had a recovery upon making proper proof.'' Pointer v. Mountain Ry. Const. Co., 269 Mo. 104, 189 S. W. 805, 807; MacDonald v. Metropolitan Street Ry. Co., supra, (219 Mo. 468, 486); Porter v. St. Joseph Ry. L. H. & P. Co., supra (311 Mo. 66, 277 S. W. 913, 914); Arnall Mills v. Smallwood, 68 F. (2d) 57, 59.

Was a case made for the jury under the res ipsa loquitur doctrine? The evidence tended to show that plaintiff was using a claw hammer, removing nails from boards he intended to use immediately on the roof of the car he was repairing. He was standing beside a stack of boards removed by others from another car. He had stooped over to pick up a board, expecting to stand up and pull the nails from it, when four heavy boxcar doors weighing 250 to 300 pounds each fell upon him. He had not seen the doors before they fell. He had his back to them and was standing two to four feet away. He didn't know how long the doors had been there, or who had put them there. The doors were propped against a post. Plaintiff had seen doors stacked that way before, ''leaning up'' against a post or stacked up against the wall in the sheds, as was the custom, but plaintiff did not work with or handle doors, nor have anything to do with placing, securing or fastening them. Plaintiff admitted that he moved forward and backward in his work, but said that he did not disturb the doors or let his body come in contact with them, nor did anything he was handling come in contact with the doors. He did not contact or bump anything that was ''holding the doors up.'' No other person was near, except a Mr. Parnell, who was working with plaintiff, and standing on the other side of the used lumber pile. Mr. Parnell saw a prop falling that had held up the doors. There was no noise before the doors fell. Plaintiff had no warning that the doors were about to fall. The doors were not in a rack and no rack was provided for them, ''nothing more than the end of a shed.''

Appellant's contention that there was no evidence ''the doors were in the exclusive possession and control of defendant'' cannot be sustained. ''The rule that the exclusive control and management of the appliance or thing causing the injury must be shown to have been in the defendant does not mean physical control, but refers to the right of such control . . .'' 45 C. J. p. 1216, Sec. 781; Cantley v. M. K. & T. R. Co., 353 Mo. 605, 183 S. W. (2d) 123, 128. Defendant's answer admitted that defendant ''owned, operated and controlled railroad tracks . . . and repair shops as alleged''; ''that it maintained and operated the shop at Mobile, Alabama''; and that ''plaintiff was working at his usual place in the said yard and was working on a freight car.'' Other facts have been stated. There is no direct evidence showing why the doors fell and no evidence that

the doors fell because of any specific negligent acts or omissions of the defendant alleged in the petition. The doors fell from no apparent cause, but the doors were in the exclusive possession and control of defendant. The fact that the doors fell was an extraordinary and unusual happening. The occurrence was such as in the ordinary course of things does not happen if the one in the exclusive possession and control exercises proper care. From the facts and circumstances shown, the jury could infer and properly find that the fall of the doors and plaintiff's injury was caused by some negligence of the defendant. Jesionowski v. Boston & Maine R. R., 67 S. Ct. 401; Sweeney v. Erving, 228 U. S. 233, 57 L. Ed. 815; Terminal R. R. Ass'n. v. Staengel, (8th Cir.), 122 F. (2d) 271; Carpenter v. Baltimore & Ohio R. Co., 109 F. (2d) 375; McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2d) 557; Whitaker v. Pitcairn, 351 Mo. 848, 174 S. W. (2d) 163, 167.

While the evidence was sufficient to make a case for the jury, under the doctrine of res ipsa loquitur, if plaintiff had pleaded general negligence, it was wholly insufficient under the charge of negligence in the petition. The court erred in overruling the motion to dismiss on the second ground and erred in giving instructions 2 and 3. However, since plaintiff made a case for the jury under the res ipsa loquitur doctrine, we will remand the cause so that plaintiff may amend his petition, pleading general negligence only, if advised to do so. It will be unnecessary to consider appellant's other assignments. The errors complained of are unlikely to happen in the event of another trial.

The judgment is reversed and the cause remanded. *Bradley* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur except *Conkling, J.*, who concurs in result only.