**Wilbur ROBINETT et al., Appellants,**

v.

**KANSAS CITY POWER & LIGHT COMPANY, a corporation, Respondent.**

**No. 25613.**

Missouri Court of Appeals,
Kansas City District.

July 6, 1972.

Motion for Rehearing and for Transfer
to Supreme Court Denied

Sept. 7, 1972.

Applications for Transfer Denied

Oct. 9, 1972.

Dean F. Arnold, Kansas City, for appellants; Bagby, Benjamin & Arnold, Kansas City, of counsel.

William H. Woodson, Kansas City, for respondent; Spencer, Fane, Britt & Browne, Kansas City, of counsel.

PRITCHARD, Judge.

For personal injuries caused by electrical shock, and for loss of consortium, plaintiffs at the trial asked the jury for $15,000.00 damages. The jury returned a verdict for defendant. Defendant says that plaintiffs' claimed errors in the giving of instructions to the jury are inconsequential because plaintiff, Wilbur Robinett, was contributorily negligent as a matter of law, citing Burroughs v. Union Electric Company, Mo.App., 366 S.W.2d 69.

There was a subdivision on Skiles Avenue in the southeast part of Kansas City, Missouri, in which houses were being constructed. Defendant's custom for new subdivisions was to dip primary electrical lines

under public streets so that traffic on the streets would not contact overhead wires. During the course of excavation of a basement on or near the scene of the occurrence, one of the underground lines was damaged, and defendant's trouble crew ran an uninsulated overhead wire, with poles, about 300 feet long, across Skiles Avenue into the construction area. The wire was less than 18 feet above the street, and as it went into the construction area it was about "eave" height. Two days after the underground line was damaged, and ten days before Robinett was injured, the underground lines were repaired, but the overhead wire remained energized.

On July 28, 1969, Robinett was engaged in hauling top soil to 10404 Skiles in a tandem axle dump truck. He had not made any trips to that address prior to the time of the occurrence. He backed into the site at an angle to avoid running over new sidewalks. As he backed in he saw the temporary overhead wire which the truck cleared by about two feet from its top. He backed on in close to a porch and dumped the load of dirt in one pile, then pulled up about two feet until the tailgate came shut, then he had to get on the truck running board to latch the tailgate, before which he let the dump bed down. He then got back into the truck and started to drive out at two or three miles an hour, taking the same general path as that taken in backing in. He looked both ways on Skiles for traffic. He then heard a noise and a big puff of black smoke came out from under the right side of the hood. He thought the truck was afire, and he got out of the truck, and as he stepped on the ground, he received a charge of electricity. The truck was completely burned.

On cross-examination Robinett testified that in his years of driving trucks he worked around electrical lines and was familiar with their appearances. He was familiar with his truck, and its hydraulically actuated dump bed, which would be raised or lowered while the truck was in motion. He had heard that the underground electri-

cal line on Skiles had been damaged and that a temporary line had been put in there. When he arrived at 10404 Skiles he got out of his truck and looked around. He saw the electrical line and knew that was what it was as he drove under it. As he dumped the load he raised the bed to its full height. The pathway he drove on was fairly level. As he backed in, he watched the wire to see how much clearance he was going to have as he went under it, and he knew that if a wire were contacted with a vehicle, it was very likely to be dangerous. On redirect examination, Robinett testified that he did not know that the underground cable had been repaired ten days before, and did not know whether or not power was on in the overhead wire. His truck was three inches higher when it was unloaded. There was a ditch where the underground line had been filled over, and the front end of the truck was over it when it caught afire.

Plaintiffs' witness, Chester Wilburn, was one block north on Skiles, and saw a dump truck run into the line, "I saw it flash." Defendant's witness, Albert P. Jackson, who was standing nearby on the street, was watching the truck unloading dirt, and its pulling forward. The noise caught his attention, and he saw the truck bed in an up position. Defendant produced evidence that the truck was 8 feet high with the dump bed down, and if it were raised to angle of 10 degrees from straight up (as it was at the scene), it would extend to a height of 18 feet, 4 inches.

■ Under the facts above outlined, it was a jury question as to Robinett's contributory negligence in driving forward with the dump bed up so that it might come into contact with the wire. There was no evidence that he knew the wire was energized; there was no evidence that he knew the dump bed would still be up and would contact the wire in the distance he had to travel forward to get the dump bed under or on the wire. There was evidence that Robinett was engaged also at

the time in watching for traffic. The Burroughs case is distinguishable on its facts. There, the plaintiff knew the crane holding the cable which came into contact with the wire was higher than the wire, yet, without looking, he walked down a slope without seeing whether the cable would contact it. There is no evidence here that Robinett actually knew at any time that the dump bed was higher than the wire. Compare the cases in which the issue of contributory negligence was declared to be a jury question: Burk v. Missouri Power & Light Company, Mo., 420 S.W.2d 274, 279 [8, 9]; Erbes v. Union Electric Company, Mo., 353 S.W.2d 659; and Potter v. Sac-Osage Electric Cooperative, Inc., Mo., 335 S.W.2d 192, 198.

■ Plaintiffs' instructions Nos. 3 and 5, each defined "negligence": "as used in this instruction means the failure to use the highest degree of care which means that degree of care that a very careful and prudent person would use under the same or similar circumstances." Instruction No. 7 submitted the contributory negligence of Robinett in failing to keep a careful lookout for electric wires, or that he permitted the truck to contact the electric wire. Robinett says that Instruction No. 7 is erroneous because, first, it did not define "negligence" as applied to him as his failure to use ordinary care, and the omission of such definition constituted misdirection because his verdict directing instructions properly defined defendant's negligence as the failure to use the highest degree of care. The argument seems to be that plaintiffs' definition of negligence applied to all verdict directing instructions in the case. Note, however, that by its terms, the definition of negligence as being the failure to use the highest degree of care was specifically restricted or directed to Instructions Nos. 3 and 5.

In Helfrick v. Taylor, Mo., 440 S.W.2d 940, 945, it was said, where an instruction was given defining "negligence" used in a contributory negligence instruction, that

"Its use was mandatory. See Notes on Use following MAI 11.02. See also the illustrations on use of instructions in MAI 31.01, 31.02, 31.03 and 31.04, all of which include an instruction defining 'negligence.'" This statement was said to be dictum in Brewer v. Swift & Company, Mo., 451 S.W.2d 131, 134, which case reserved the question of whether negligence need not be defined in every case. It is obvious that the Notes on Use following MAI 11.02 are cautionary in nature so that in a case involving more than one kind of negligence there will not be a misdirection as to the standard of care by the giving of one general instruction defining negligence covering the entire case. For example, as illustrated, the ordinary care of a passenger should be defined *separately* from the highest degree of care of an automobile driver upon public highways. Compare Rickman v. Sauerwein, Mo., 470 S.W.2d 487, 490. In the Brewer case, loc. cit. 451 S.W.2d 131, 133, it was said that "It does not appear that the instructions for use of MAI specifically require the use of a definition instruction for negligence", and "Although we do not hold that in every case the giving of a negligence definition is required by MAI, it would appear to be the better practice to include such definition where the term 'negligence' appears in any of the instructions."

Since the original submission of this case (that submission being set aside), Rakestraw v. Norris, Mo.App., 478 S.W.2d 409, was handed down. In a posture inapposite to the present case, Rakestraw required that because of the broad generality of the lookout submission, the terms "negligent" and "negligence" as used therein should have been defined, the omission of those definitions being the reason for reversal and remand of the case for new trial. No such broad generality of a failure to keep a lookout (for all possible danger) here exists. As submitted in Instruction No. 7, plaintiffs' duty was specifically limited to keeping a lookout for electric wires. In the later case of Meier v. Geile, Mo.App., 479 S.W.2d 214, 216[3, 4], the

giving of a cautionary instruction excluding plaintiff's antecedent negligence in a humanitarian case was held to have been proper, and although it is not clear why the negligence of the minor plaintiff was at all in issue in the humanitarian submissions, an instruction on that proposition was apparently given in accordance with MAI 11.04. The statement in the Meier case, "Without a definition of negligence the verdict directors would give the jury a roving commission" is obviously dictum, and such does not prevent a determination of the necessity of defining negligence on a case to case basis, under Rule 70.01(c), V.A.M.R. In Cunningham v. Hayes, Mo. App., 463 S.W.2d 555, 564[13, 14] [15], referred to in Meier, the distinguishing situation was that of res ipsa loquitur negligence, in which case because of the necessity of a finding of probability of negligence [from the circumstances] it was held that negligence must be defined as set forth in MAI 11.02(1), as a necessary ingredient of that probability.

■ Under the facts of this case, where the verdict directing instructions (3 and 5) limited the definition of negligence to them, the jury could not be misled into believing that a "highest degree of care" standard applied to Robinett's conduct. If there actually exists prejudicial errors of misdirection in instructions, argument of counsel covering the matter would not cure the errors, because the argument would be pitted against the instructions of the court. See R-Way Furniture Company v. Powers Interiors, Inc., Mo.App., 456 S.W.2d 632, 640[15]. However, as noted, there was no misdirection by the omission of the definition of negligence as that word appears in Instruction No. 7. Of some importance, then, is counsel's argument to the jury as bearing upon plaintiffs' contention that the jury could have applied the "highest degree of care" to his conduct as submitted in Instruction No. 7. That argument was: "Well, you know, if you will notice in these instructions, it is sort of a double standard of care. Now, I want to talk to you a minute about that. The Power Company has to use the highest degree of care. The driver, my client, only has to use ordinary care, not the highest degree of care."

■ The negligence of Robinett submitted in Instruction No. 7 was that he knew or by the use of ordinary care could have known there was a reasonable likelihood of injury if *any portion* of the truck contacted an electrical wire while he was operating it and, second, (Robinett) *while he was operating* the truck either: failed to keep a careful lookout *for electric wires*, or caused or permitted the truck to contact the *electric* wire and * * *. Plaintiffs say that the italicized words fail to follow the approved submission of lookout specified by MAI 17.05 in that they add "for electric wires", and that the "fat" of excess verbiage in the instruction causes it to be argumentative. MAI 17.05 does contain only a simple lookout submission, which is usually sufficient to cover most cases such as automobile actions, slip and fall cases and the like. Here there was no applicable MAI instruction on contributory negligence in an electric high line case. Defendant very properly adopted MAI 17.05 to fit the facts in this case, and to add to it the very thing which caused Robinett's injury—contact with an electric wire on a construction site where he was driving his truck, for which he was under a duty to keep a lookout to avoid running his truck into it. The facts in this case are simple, and the jury obviously understood the whole situation—plaintiffs' claim and the defense of Robinett's contributory negligence. The jury could not have been misled by the inclusion of any of the italicized words. The instruction was simple, brief, impartial and free from argument, and did not require a finding of detailed evidentiary facts. Civil Rule 70.01(e), V.A.M.R. Silvey v. Missouri Pacific Railroad Company, Mo., 445 S.W.2d 354, 362, involved a departure from MAI 17.05 in a vehicle-train case, and thus is distinguishable. No prejudice to plaintiffs in the giving of In

struction No. 7 is discernable. Civil Rule 70.01(c), V.A.M.R.

■ The third attack on Instruction No. 7 is that it erroneously submits two contradictory grounds: "lookout" and "permitting the truck to contact the wire", contended to be respectively a specific ground of negligence and a general ground of negligence. Cited in Skiles v. Schlake, Mo., 421 S.W.2d 244. That case held it to be error to combine "lookout", a specific ground of negligence, with "driving a motor vehicle off the roadway", a general ground of negligence. Here, the submission of permitting the truck to contact the wire (which was in plain view) is not a general submission, and is comparable to vehicular rear end cases, held to be an assignment of specific negligence. Jones v. Central States Oil Co., 350 Mo. 91, 164 S. W.2d 914. In the Skiles case, referring to Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, it was said, "[T]he injurious consequences are produced by some specific act of negligence, such as excessive speed or failure to keep a lookout, not inherently involved in the act of driving off the roadway." So here, Robinett's injury was occasioned either by failure to keep a lookout or permitting the truck to contact the electrical wire, the ultimate facts submitted under defendant's theory, and which constituted two specific grounds of negligence properly submitted.

The judgment is affirmed.

All concur.