CITY OF KENNETT, Missouri, a
Missouri Municipal Corporation,
Respondent,

v.

Eugene M. AKERS, ·Appellant.

No. 59970.

Supreme Court of Missouri,
En Banc.

April 10, 1978.

42

James F. Ford, Ford, Ford, Crow & Reynolds, Kennett, for appellant.

David W. Keathley, Poplar Bluff, Harold B. Treasure, Kennett, for respondent.

BARDGETT, Judge.

This is a suit by the City of Kennett for damages done to its electric power and light system caused by a radio antenna tower which was being erected by defendant Akers falling onto the City's power lines. The jury verdict and judgment was for plaintiff-respondent City for $18,563.19. Defendant-appellant Akers appealed to the Missouri Court of Appeals, Springfield district, which affirmed and, among other things, held that the instruction authorizing a verdict for plaintiff which stated, "First,

defendant allowed the antennae tower to fall into the electric power line, and Second, defendant was thereby negligent, and . . . ." submitted specific, not general, negligence. Defendant's application for transfer was sustained by this court principally to consider whether the submission mentioned was specific or general and, if general whether plaintiff, having pleaded both specific and general negligence, was entitled to submit on a general negligency (res ipsa loquitur) type of instruction. The court considered this to be a matter of general interest and importance. Art. 5, sec. 10, Mo.Const.

The parties will be referred to as plaintiff or City and defendant. The accident happened April 14, 1973. Defendant had purchased a radio antenna tower to be erected on his lot in Kennett, Missouri. The tower was of a common type built in a triangle with each side being approximately ten inches and being in six 10-foot sections, with an antenna on top approximately seven feet in height and having total weight of about 200 to 225 pounds and total height of 67 feet. Defendant had previously put up several other similar towers in and around Kennett. Defendant had a welder construct a steel double-hinged plate with one of the plates being stationary and attached to the concrete base and the other bolted to the tower and hinged to the north so that the tower could be raised thereon. This was a self-sustaining tower. On April 14, 1973, defendant, with some other men aiding him, assembled the tower on the ground, laid it across a dump truck at an angle and placed the antenna on top thereof, and with a block and tackle running south to the back of the yard, pulled the tower up and into place. There was attached to the tower a cable on each of the three legs thereof, which were to be used as additional precaution in sustaining the tower with one cable to the southwest, one to the southeast, and one to the north. The cables were attached approximately 40 feet from the base of the tower. The men secured the cables to light or telephone poles to the north, southeast and southwest. Defendant had obtained other light or tele-

phone poles in order to subsequently bury same in the ground for anchorage, thus removing the cables from the light or telephone poles. The tower was higher than the electrical lines. Defendant's house was about 15 to 20 feet in height and the tower was 40 to 47 feet above the house. After the tower was secured at the base, one of the men proceeded up the tower to about the 40-foot level and removed the block, tackle and rope which had been used to raise the tower. The tower had been constructed as a self-sustaining tower and had been standing for approximately 45 minutes, and while they were in the process of attaching the guy wires for additional securing purposes the tower fell. Defendant did not know what caused it to fall. He did not drop the tower nor did anybody else drop it. When the tower fell, it struck the tree and electrical lines to the south and injured defendant and two others who were holding the cables. Defendant's hands were burned but he remained at the site, and the other two were taken to a hospital. One of the primary lines fell down across the chain link fence and the fire therefrom immediately jumped to the ground, started melting the sand and turning it into hunks of glass-like material with a lot of sparks, arcing, fire, blue and red flames, and another primary line fell into the tree and was sparking and smoking, and all of same continued until Oscar Poe, lead lineman for the City, terminated same manually at the disconnect located to the south of the lines. The tower fell to the south and the block and tackle, together with the rope, were directed to the south and would not have prevented the tower from falling in that direction. Oscar Poe arrived at the scene about 45 minutes after the incident and when he arrived he discovered two primary and two secondary lines down and fully energized with one primary on the chain link fence sizzling, popping, arcing and shooting out fire seven or eight inches. There was a hole burned in the fence. Another primary line was in the tree smoking.

The tower was lying over in the tree wrapped in secondary wires. This continued until terminated by the disconnect.

Plaintiff's second-amended petition alleged eight items of negligence against the defendant, some of which are clearly allegations of specific negligence.[1] Paragraph 3(f) alleged, "Defendants carelessly and negligently allowed the tower to fall into and collapse into the electric power line owned and operated by the Plaintiff."

Plaintiff submitted the case to the jury by instruction No. 2 which reads:

"Your verdict must be for plaintiff if you believe:

First, defendant allowed the antennae tower to fall into the electric power line, and

Second, defendant was thereby negligent, and

Third, as a direct result of such negligence the plaintiff sustained damage.

MAI: 17.01 Modified

By Pl."

The defendant contends instruction 2 submits general negligence; that plaintiff was not entitled to submit general negligence unless the case is one where the res ipsa loquitur doctrine applies, and even then not where specific negligence is also pleaded in plaintiff's petition.

It is obvious that par. 3(f) and instruction 2 allege the same—not different—type of negligence. They are either both general or both specific. There is a plethora of cases in this state and elsewhere where the issue was whether a particular allegation or submission was either general or specific. See cases cited at 836–837 in *May Department Stores Co. v. Bell*, 61 F.2d 830 (8th Cir. 1932), and Right to Rely on Res Ipsa Loquitur, 160 A.L.R. 1450, 1469. The plaintiff contends par. 3(f) and instruction 2 are specific negligence citing and principally relying upon *Robinett v. Kansas City Power & Light Co.*, 484 S.W.2d 506 (Mo.App.1972). Defendant contends the pleading and sub-

---

1. Failure to "guy" the tower, constructed it in violation of Rule 95.37 FCC Code, violation of certain of the City's ordinances, etc.

mission were general, citing and principally relying upon *Hunter v. Norton*, 412 S.W.2d 163 (Mo.1967).

In *Robinett* the plaintiff Robinett was the driver of a truck which he drive into contact with a temporary overhead electrical wire. The defendant submitted contributory negligence of plaintiff in an instruction which authorized a defendant's verdict if plaintiff negligently failed to keep a lookout for electric wires *or* caused or permitted the truck to contact the electric wire. On appeal plaintiff contended that the instruction submitted specific (lookout) and general (permitting truck to contact wire) negligence and that combining the two constituted error. The court disposed of the contention that the submission of contributory negligence in permitting the truck to contact the wire was general by comparing it to vehicular rear-end cases which have been held to submit specific negligence and their holding that the submission was one of specific negligence, citing *Jones v. Central States Oil Co.*, 350 Mo. 91, 164 S.W.2d 914 (1942). The same analogy cannot realistically be made when the event involves a falling object whose course and direction are simply not directly controlled throughout its movements by a "driver".

■ Neither the allegation of negligence as set forth in par. 3(f) nor the submission found in instruction 2 point to any particular act or failure of the defendant as the cause of the fall of the antenna tower. The plain words of the allegation and submission are general and the court so holds.

Next we must determine if this is the kind of occurrence which can be properly pled and submitted on general—res ipsa loquitur—negligence.

■ Falling objects have been fertile ground for the application of the res ipsa loquitur doctrine ever since a barrel of flour rolled out of a warehouse and fell on a passing pedestrian in *Byrne v. Boadle*, 2 H. & C. 722, 159 Eng.Rep. 299 (1863). Much has been written about the doctrine and the courts of various states have defined or explained it differently. In Missouri it is

considered a rule of evidence. *Empiregas, Inc., of Noel v. Hoover Ball & Bearing Co.*, 507 S.W.2d 657 (Mo.1974), 58 Am.Jur.2d Negligence, sec. 475, at 48, and, if applicable to a given factual situation or event, simply means that the happening of the event provides sufficient circumstantial evidence so as to allow, but not compel, the jury to infer from that evidence that the event happened because of the defendant's negligence and to so find. *McCloskey v. Koplar*, 329 Mo. 527, 46 S.W.2d 557, 559 (Banc 1932). The event must be an unusual occurrence of a character which ordinarily results from negligence and from which, therefore, negligence is a reasonable inference. Whether or not a given event is that unusual occurrence which ordinarily results from negligence is a judicial decision which is arrived at by judges applying their common experience in life to the event which gives rise to a suit and deciding whether the criteria for the res ipsa loquitur are satisfied.

The event in the instant case is the falling of defendant's radio antenna tower which was being erected or had just been erected by the defendant and other men acting for and under the direction and control of defendant on the defendant's property.

In *Stubblefield v. Fed. Res. Bank of St. Louis*, 356 Mo. 1018, 204 S.W.2d 718 (1947), (overruled in *Marquardt v. Kansas City Southern Railway Co.*, 358 S.W.2d 49 (Mo. banc 1962), *infra*, because it failed to separate two successive and distinct acts of negligence, the failure to warn and barricade the area and the falling of the wedge), plaintiff was walking on a sidewalk in St. Louis when a wooden wedge fell from near the top of the Federal Reserve Bank Building striking her on the head and shoulders. On the question of whether or not this type of accident comes within the res ipsa loquitur rule, the court said at 204 S.W.2d 720:

"Had the plaintiff pleaded and relied upon the mere circumstance of the fall of the wedge there could not be the slightest doubt but that she would have presented a typical res ipsa loquitur situation. *Kelly v.*

*Laclede Real Estate & Investment Co.,* 348 Mo. 407, 155 S.W.2d 90, 138 A.L.R. 1065; *Pandjiris v. Oliver Cadillac Co.,* 339 Mo. 711, 98 S.W.2d 969; *Neal v. Twelfth & Grand Ave. Bldg. Co.,* 228 Mo.App. 536, 70 S.W.2d 136; *Walsh v. Southwestern Bell Tel. Co.,* 331 Mo. 118, 52 S.W.2d 839; *Kean v. Smith-Reis Piano Co.,* 206 Mo.App. 170, 227 S.W. 1091. In the *Kelly* case a piece of terra cotta fell from a building and struck a man sitting on the sidewalk. In the *Pandjiris* case a brick fell from a third story window and struck a pedestrian. In the *Kean* case a flagpole fell from a building and hit a pedestrian. And, in the *Neal* case a stick of wood thirty-seven inches long and two inches square fell from the seventh story of a building in process of construction and struck a pedestrian. But, whether the basis of the view is sound or not (38 Am.Jur., Sec. 305, p. 1001), we are definitely committed to the rule that a plaintiff who pleads specific negligence is thereby precluded from relying upon res ipsa loquitur. The Missouri cases are collected in the annotations, 79 A.L.R. 48, 51, 52; 160 A.L.R. 1450, 1453. In this case by pleading in addition to the fall of the wedge the failure to erect a barrier over the sidewalk and failure to warn of the attendant danger the plaintiff pleaded specific negligence. *Rice v. White,* Mo.Sup., 239 S.W. 141."

More recently in *Lawley v. Kansas City,* 516 S.W.2d 829 (Mo.App.1974), it was held that res ipsa loquitur was applicable where a valve gate fell from a sling as it was being lowered into a pit by a city crew.

The occurrence in the instant case—an antenna tower falling—is an unusual occurrence and does not ordinarily happen in the absence of negligence. There is no question but what exclusive control was in the defendant. The doctrine is applicable to this occurrence.

As stated in *Stubblefield,* the practice in Missouri has generally been that if a plaintiff *pleads* specific negligence he cannot submit on res ipsa loquitur even though the occurrence is such as would be subject to the rule res ipsa and even though plaintiff had failed to prove the precise cause of the occurrence. This concept seems to be premised on the proposition that if a plaintiff says in his petition that a specific negligent act caused the occurrence then plaintiff has shown that he does not need the benefit of res ipsa loquitur. This concept presumes that all allegations made in a petition will be proved or at least that plaintiff can prove them if he wants to do so. Experience dictates that is not so at all. The petition is the first pleading in a case and contains allegations plaintiff's attorney believes to have been the cause of an occurrence and which he hopes to prove. Sometimes his belief is incorrect and his hope is in vain.

But if the occurrence is one which is subject to the res ipsa loquitur rule then is there some good reason why plaintiff should be deprived of it when plaintiff's efforts to prove the specific or precise cause fail? In this connection it must be observed here that if a plaintiff pleads general negligence he may submit evidence of specific negligence and will, nevertheless, be allowed to submit on res ipsa loquitur unless the plaintiff's evidence shows the precise and specific negligence cause. *Timmons v. Kurn,* 231 Mo.App. 421, 100 S.W.2d 952 (1935). Additionally, a plaintiff may, prior to trial, during trial, or prior to a new trial, amend his petition by striking all allegations of specific negligence and proceed to trial on general negligence. *Conduitt v. Trenton Gas & Electric Co.,* 326 Mo. 133, 31 S.W.2d 21, 24 (1930); *Maxie v. Gulf, M. & O. R. Co.,* 356 Mo. 633, 202 S.W.2d 904 (1947), and same case on retrial, 358 Mo. 1100, 219 S.W.2d 322 (1949).

In *Stubblefield* the court questioned the soundness of the rule there applied but simply said that whether it was sound or not it would be applied because it had been applied in the past. Considering the soundness of the rule in the light of this case, the following observations are in order. If we hold the submission to be general (res ipsa loquitur) and reverse and remand for new trial because the petition contained allegations of specific negligence, along with the allegations of general negligence, the plain-

tiff would be able to simply strike the specific allegations and proceed with the new trial on the allegations of general negligence. The evidence in the case which the court and jury would hear would not necessarily vary one bit from that of the first trial. The instructions may be worded somewhat differently but they would constitute a submission of general negligence—again res ipsa loquitur—and the jury would again decide the case on the same evidence, virtually the same instructions, and the same argument.

That is what happened on the second trial in *Maxie*, where the court said at 219 S.W.2d 323:

"This is a second appeal by the railroad in a suit for personal injuries under the Federal Employers' Liability Act, as amended, 45 U.S.C.A. sec. 51 et seq. At the first trial the case was submitted to the jury under the res ipsa loquitur doctrine, and the jury gave plaintiff judgment for $17,000. Upon appeal, we reversed and remanded on the ground submission under the res ipsa loquitur doctrine was error since the petition had pleaded acts of specific negligence on the part of the railroad. Our opinion is reported in 356 Mo. 633, 202 S.W.2d 904.

"After remand plaintiff amended his petition to plead general negligence only, went to trial the second time, again submitted his case under the res ipsa loquitur doctrine, and again recovered a judgment. The judgment was reduced by remittitur from $32,000 to $16,000, and the railroad has appealed from the reduced judgment.

"The facts are not disputed. At the second trial they were the same as those adduced at the first trial. The railroad put on no testimony at the first trial. At the second the testimony it adduced was to a large extent merely cumulative of plaintiff's testimony."

In *May Department Stores Co. v. Bell, supra*, at 839, the court said there were but three states which strictly follow the rule in Missouri; namely, Kansas, Montana, and

Texas. The "rule" referred to, of course, is that if a plaintiff's petition contains *allegations* of specific negligence and/or allegations of general negligence, the plaintiff will not be allowed to submit on res ipsa loquitur even though plaintiff's proof did *not* show the precise and exact cause of the occurrence and even though the occurrence is one to which res ipsa loquitur is applicable. The existence of this rule in Missouri has caused numerous appeals to turn on the question of whether an allegation in the petition was general or specific. The numerous decisions on the subject as early as 1932 prompted the court in *May Department Stores Co.* to say at 836: "It is virtually impossible to determine from the Missouri decisions what is to be regarded as an allegation of specific negligence and what an allegation of general negligence. This grows out of a lack of uniformity in the application of the rule, rather than in the statement of it, . . ." citing 22 cases where the pleading was held specific and then citing 13 cases where the pleading was held to be general.

The court then said at 837: "Under the holdings in *Price v. Metropolitan St. R. Co.*, [220 Mo. 435, 119 S.W. 932], *Stauffer v. Metropolitan St. R. Co.*, [243 Mo. 305, 147 S.W. 1032], and *Porter v. St. Joseph Ry., Light, Heat & Power Co.*, [311 Mo. 66, 277 S.W. 913], the allegation of negligence with which we are concerned appears to be general; while under *Feary v. Metropolitan St. Ry. Co.*, [162 Mo. 75, 62 S.W. 452], *Davidson v. St. Louis Transit Co.*, [211 Mo. 320, 109 S.W. 583], and *Pointer v. Mountain Ry. Construction Co.*, [269 Mo. 104, 189 S.W. 805], the complaint apparently charges specific negligence."

On this issue the court of appeals, after holding a pleading to be general, certified *Sanders v. City of Carthage*, 9 S.W.2d 813 (Mo.App.1928), to this court because prior cases on the matter were in irreconcilable conflict. This court then held the pleading to be specific and reversed and remanded [2] for new trial even though the occurrence

---

2. Others errors were found but it is apparent that the principal reason for reversal was the pleading.

(the falling of defendant's electric power line) was one to which res ipsa loquitur is applicable. *Sanders v. City of Carthage*, 330 Mo. 844, 51 S.W.2d 529 (1932). What happened on remand for new trial is not known to us, but we do know that plaintiff could have simply stricken the specific allegation of negligence from the petition (a matter the jury would not be informed about) and at trial introduced exactly the same evidence, used virtually the same instructions, made the same argument, and had the second jury decide the same case on the same issues. The requirement that a plaintiff who pleads both specific and general negligence in a case to which res ipsa loquitur is otherwise applicable cannot submit on res ipsa loquitur simply because he pleaded specific may have served a sound purpose when discovery was limited or nonexistent, but to continue with such a rule today simply to enforce a technical, and perhaps outdated, rule of pleading by requiring a new trial that would or could be exactly the same as the first trial, is wasteful, unproductive, and causes unnecessary expense to the parties and delay in the disposition of disputes.

*Marquardt v. Kansas City Southern Railway Co.*, 358 S.W.2d 49 (Mo. banc 1962), was an F.E.L.A. case where plaintiff alleged res ipsa negligence in the sudden and unusual movement of a bleeder pipe and specific negligence with reference to premises underfoot in that the premises were slick, slippery, etc. Plaintiff submitted on res ipsa loquitur and a verdict was returned in favor of plaintiff. Defendant appealed contending that it was error to allow plaintiff to submit on res ipsa because plaintiff also alleged specific negligence. Plaintiff's injuries occurred as a result of slipping and falling when he was frightened and ran from a whirling bleeder pipe. This court affirmed the judgment reasoning that there were two *successive* acts or occurrences of alleged negligence, each separate and distinct from the other. The first in sequence was the whirling bleeder pipe (res ipsa loquitur) and the second was allegations as to the slippery conditions underfoot (specific negligence). The case was submitted on a

res ipsa loquitur instruction in which the whirling bleeder pipe was hypothesized as the occurrence which contributed to the fall and injury. The court decided that the hypothesized occurrence was one subject to the res ipsa loquitur rule and because the two alleged negligent occurrences (whirling bleeder pipe and slippery footing) were successive rather than concurrent, that the case constituted an exception to the rule against allowing a res ipsa loquitur submission where both general and specific negligence are pleaded. The dissenting opinion in *Marquardt* had been the divisional opinion which had been sent to the parties when the court transferred the case to banc. The dissenting opinion disagrees saying the "exception" found by the majority to exist was but an excuse for deviating from pre-existing rule reference pleading specific and general but submitting general. However, it should be recognized that if the dissenting opinion had been adopted the new trial could have consisted of exactly the same evidence, same instructions and same argument, and resulted in the same verdict. The *only* change required would have been for plaintiff's attorney to strike the *allegation* of specific negligence from the petition.

What these cases demonstrate is that there was no error materially affecting the merits of the action in the first trial and the second trial was ordered simply to adhere to a technical rule which no longer serves a practical purpose. And judgments should not be reversed unless error materially affecting the merits of the action is found to exist. Sec. 512.160, subsec. 2, RSMo 1969; Rule 84.13(b).

The court of appeals, Kansas City district, had the same issue before it in *Bratton v. Sharp Enterprise, Inc.*, 552 S.W.2d 306 (Mo. App.1977). That court recognized that it was the settled procedural law of Missouri that a plaintiff may not submit under a res ipsa loquitur theory if he either (1) pleads specific negligence only or (2) pleads general negligence but proves the real and precise cause of the injury. We add (3) if plaintiff pleads both general and specific he

was precluded from submitting general negligence (res ipsa loquitur). The court of appeals opinion thoroughly considered the past procedural law and the more recent amendments to Rule 55.10 and concluded that this court has changed its procedural law relating to pleading by amending Rule 55.10 in 1973 so that it now reads:

"A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has *regardless* of *consistency* and whether based on legal or equitable grounds." (Italics added.)

The italicized portion of the 1973 amendment was found by the court of appeals to constitute the authority for a plaintiff to plead both res ipsa loquitur and specific and removed the *specific pleading* impediment to submission on res ipsa loquitur provided that plaintiff is not precluded by *his evidence* from submitting res ipsa loquitur. The court of appeals, of course, could not overrule prior cases of this court but certainly has the jurisdiction to construe a rule and reach a result different from those cases handed down prior to the adoption of the amended rule. We believe the rationale of the court of appeals is sound. The views of this court on the matter set forth supra and those of the court of appeals coincide and reach the same result.

■ The court holds that a plaintiff may, in a case where res ipsa loquitur is applicable to the occurrence causing the damage, plead both general (res ipsa loquitur) negligence and specific negligence and is not precluded from submitting general solely and simply because of the specific allegation in the pleading. Cases holding to the contrary are overruled.

The instruction used by plaintiff in this case has been set forth supra for the pur-pose of considering whether it sounded in specific or res ipsa loquitur negligence and not for approval as a model in this type of case. The instruction set forth in *Lawley v. Kansas City, supra* at 834, more closely approximates the res ipsa loquitur instruction appearing in MAI No. 31.02(2) and is a better form to follow until such time as a specifically applicable MAI is published. However, there is no complaint that the form of the instruction used here prejudiced defendant aside from the fact that it did not submit a specific item of negligence, a matter ruled supra.

Defendant also contends that the trial court erred in giving instruction No. 5 submitted by plaintiff because (1) the evidence was insufficient as to proof of damages, (2) more than one "occurrence" was involved requiring the court to substitute a descriptive term to limit the jury to occurrences caused by defendant, and (3) as only property damage was involved the instruction should have been in the form prescribed by MAI No. 4.02.

■ Plaintiff offered the only evidence on the issue of damages. Defendant's sole objection was to the qualifications of the City's witness who testified about the damage to the transformer. The witness augmented his qualifications and then proceeded to give his opinion of the damage without further objection by defendant. Under these circumstances, defendant has waived his right to object on appeal. Rule 84.13(a); *Federal Deposit Insurance Corp. v. Crismon*, 513 S.W.2d 305, 307 (Mo.1974).

■ Defendant contends that there were two occurrences in this cause, one at the site where the tower fell and the other at the transformer. The evidence viewed in a light most favorable to the City does not support this conclusion. The tower fell causing a serious overcurrent which traveled at or near the speed of light past the impotent breakers until it reached the transformer. The entire sequence took only a fraction of a second. The damage to the transformer was the direct and proximate result of the tower falling across the

power lines. No modification of the instruction was required under this point.

Defendant's third objection to instruction No. 5 is also without merit. Instruction 5 was MAI No. 4.01: "If you find the issues in favor of the plaintiff, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe [it] sustained as a direct result of the occurrence mentioned in the evidence."

MAI No. 4.02, which defendant contends should have been submitted, uses as the measure of damages the difference between the fair market value before and after the occurrence plus compensation for loss of use. Clearly, such an instruction is inadequate where the evidence shows the difference between the fair market value before and after the accident greatly exceeds the cost of repair. MAI No. 4.02 (Supp.1976), which measures damages on the cost of repair plus loss of use, would have been proper had not additional items of damages been sought.

Any reasonable expenses proximately resulting from damage to property are usually a proper element of recovery (25 C.J.S. Damages § 48a, at 770–772) and such expenses are not to be classified as property loss or property damage (*Rotert v. Peabody Coal Co.*, 513 S.W.2d 667, 677 (Mo.App. 1974)). Plaintiff sought damages for items not susceptible to being measured by before and after value as required by MAI No. 4.02 nor by the reasonable cost of repair as per MAI No. 4.02 (Supp.1976). These items of damage include the cost of loading the transformer onto a lowboy for transportation to the repair site—$170.00, and the labor cost of moving the damaged transformer out and the repaired one into the substation—$475.80.

MAI No. 4.02, which is to be applied where damages involve property damage only (MAI 4.02, "Notes on Use") was not proper in this instance. Damages were correctly submitted under the more general MAI No. 4.01. If defendant felt it too general, it was incumbent upon him to sub-

mit an explanatory or modifying instruction. *Barber v. M.F.A. Milling Co.*, 536 S.W.2d 208, 210 (Mo.App.1976).

As MAI No. 4.02 was not necessary, it was also unnecessary to give MAI No. 16.02 defining the term "fair market value". Defendant's argument that MAI No. 4.02 was required is overruled.

Defendant's final contention contains two points. Defendant contends that Eugene Hale, an expert produced by the City, considered not-in-evidence reports in his testimony and that Mr. Hale's failure to examine the inside of the transformer made it impossible for him to ascertain the nature of the damage. As to the latter point, Mr. Hale testified that an internal examination of the transformer was not necessary in order to answer the hypothetical question directed to the issue of whether the damage to the transformer was the direct and proximate result of the collapse of the tower. As to the former point, it is unclear exactly what "report from somebody else" it is that Mr. Hale is claimed to have considered or what part of such report he considered in answering the hypothetical question. The written or oral report could have represented an assumed fact contained in the hypothetical question or a report contained in testimony already in evidence. Simply because an expert bases his opinion on what someone told him does not necessarily make the opinion insufficient where the fact related is established at trial and submitted in the hypothetical question. *Harp v. Illinois Central Railroad Co.*, 370 S.W.2d 387, 393 (Mo.1963). The cross-examination of Mr. Hale failed to point out how these "reports" were used in his testimony and it is not up to us to speculate about his use of some written or oral report. There was no showing that whatever facts Mr. Hale may have seen in the "report" were not also in evidence in this case. The record is too vague on this matter for the court to conclude prejudicial error was committed.

The judgment is affirmed.

MORGAN, C. J., and FINCH, RENDLEN and SEILER, JJ., concur.

HENLEY and DONNELLY, JJ., concur in result.